GILSEY et al. v. KEEN et al.

(Supreme Court, Appellate Division, First Department.   May 5, 1905.)

Appeal from Trial Term, New York County.

Action by Henry Gilsey and others against Albert R. Keen and others.   From a judgment on a verdict in favor of plaintiffs, defendants appeal.   Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Louis O. Van Doren, for appellants.

Sol. Kohn, for respondents.

LAUGHLIN, J.   The issues in this action are precisely the same as those in action No. 1, argued and decided herewith (93 N. Y. Supp. 783) excepting that this is an action for the rent for the months of June and July, and consequently the opinion in the other case is decisive of this, and the judgment should be affirmed, with costs.   All concur.

McGINNESS v. THIRD AVE. R. CO.

(Supreme Court, Appellate Division, First Department.   May 5, 1905.)

1. NEGLIGENCE—EVIDENCE.
    Where the conductor of a street car, while standing on the platform, was thrown therefrom by a sudden jerk of the car—the car at the time being drawn by another car operated by defendant, a corporation other than the conductor's master—and there being no evidence as to what caused the jerk, the conductor was not entitled to recover.

2. EVIDENCE—HYPOTHETICAL QUESTION.
    In an action for injuries, in which it appeared that plaintiff had varicose veins, the court asked a physician who had examined plaintiff whether he could say that such condition was caused by the accident to which the witness replied that it could come from the same.   The court then asked, "In your opinion, did it?" and stated that witness might assume that plaintiff was a perfectly well man before the accident.   The witness replied that, if the condition was not there before, it would come from the accident, and the court then asked: "Assuming all of these facts, can you say with a reasonable degree of certainty whether the injuries described will be permanent."   Held, that the hypothetical question was objectionable as indefinite and confused.

    [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 2369, 2370.]

3. NEGLIGENCE—EVIDENCE OF INJURIES.
    In an action for injuries, held, that the evidence was insufficient to show that the injuries complained of were caused by the accident in question.

Appeal from Trial Term, New York County.

Action by Daniel McGinness against the Third Avenue Railroad Company.   From a judgment in favor of plaintiff, defendant appeals.   Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Bayard H. Ames, for appellant.
L. Barton Case, for respondent.

INGRAHAM, J.   The complaint alleges that the defendant was the owner of and controlling and operating a railroad on Third Avenue and Park Row, in the city of New York, at the times mentioned in the complaint; that on the 23d day of May, 1899, and for several years previous thereto, the plaintiff had been employed as a conductor upon cars owned, operated, and controlled by the Dry Dock, East Broadway & Battery Railroad Company; that on the 23d day of May, 1899, the plaintiff was lawfully acting in his capacity as a conductor on car No. 231, owned, operated, and controlled by the Dry Dock, East Broadway & Battery Railroad Company, and that said car, with the plaintiff therein acting as aforesaid, was coupled, attached, or otherwise connected to a car owned, operated, and controlled by the defendant, its servants, agents, and employés, and that said car No. 231 was being drawn or propelled upon the tracks owned, operated, and controlled by the said defendant upon said Third avenue and Park Row at a moderate rate of speed, when said defendant, its agents or servants, carelessly, negligently, and suddenly, and without any warning to the plaintiff, increased the speed of the said car, and, through no fault of the plaintiff, he was thrown over the rear dashboard of the said car and was injured. The defendant admits the operation of a railroad, and that the plaintiff was employed as a conductor upon the cars operated and controlled by the Dry Dock Railroad Company. It alleges that at the time of the accident the plaintiff was a servant in the employ of the defendant, and that any injuries received by the plaintiff were due to the negligence of another servant of the defendant, engaged in the same general business as the plaintiff, and not to any negligence on the part of the defendant. The plaintiff testified that on the 23d day of May, 1899, he took charge of his car about 5 o'clock in the morning, went down to the City Hall, and on the return trip, while his car was going back to Roosevelt street, the Third avenue gripman put power to his car, and jerked the car the plaintiff was on so that he was thrown across the dashboard, on the broad of his back; that the car had been drawn by horses to Chatham Square, was then coupled to a Third avenue car, around the post office, and back again to Chatham Square; that when he was thrown from the dashboard he fell on his back; that he did not himself attach his car to the Third avenue car; that about a week after the accident he noticed that the veins in his leg began to swell, and that that condition has continued to the present time; that he did not feel that anything was the matter with his leg until he wanted to walk as he left the hospital. During the cross-examination the witness was asked by the court to describe the jerk which the car sustained when the gripman put on the power. Counsel for the defendant excepted to that question, and the witness answered: "When the gripman put on the power on the car, I had hold of the hand rail, standing on the rear platform. I tried to hold onto it, but could not." This witness was on the rear plat-

form of the horse car. The horse car was attached to one of the cars of the defendant which was operated by cable. It is quite apparent that he could not tell what the gripman did on the front platform of the defendant's car. He does not testify that he saw the gripman in the car, or that there was a gripman there at all. The only evidence in the case is that the plaintiff was standing on the back platform of his car; that his car was attached to a Third Avenue car operated by cable; that there was a sudden jerk of the car which he was on, and he was thrown into the street. The plaintiff was not a passenger upon the defendant's car. He was not an employé of defendant, but was in the employ of another company, which was at the time of the accident operating its own road. Although alleged in the answer, there was no proof that the defendant was operating both roads. If that proof had existed, it would have been clear that any negligence in operating the car was the negligence of a fellow servant, for which the defendant is not responsible; but, assuming that the defendant was an employé of an independent company, and that the defendant furnished the motive power for the car upon which the plaintiff was employed, to justify a recovery the burden was on the plaintiff to prove that the sudden jerk was caused by some negligence of the defendant. There being no relation of passenger and carrier, the maxim res ipsa loquitur cannot help the plaintiff. No one testified that the motorman of the defendant's car did put on the power, or that any act of his or any of the defendant's employés caused the jerk which threw the plaintiff over the dashboard of the car upon which he was standing. I do not think, therefore, that the jury were justified in finding that the plaintiff was thrown from the car by the negligence of the defendant.

There is an exception to evidence which I think requires a reversal of the judgment. There was no allegation in the complaint that the plaintiff's injuries were permanent; the sole allegation as to damage being that owing to the negligence and carelessness of the defendant, its agents or servants, the plaintiff was damaged and put to various expenses, and is still suffering from the effects of said injuries, to his damage in the sum of $25,000. A physician was called, and testified that he examined the plaintiff's leg two days before the trial; that he found a large mass of varicose veins enlarged on the plaintiff's leg. Counsel for plaintiff then started to frame a hypothetical question, to which, as the question was being asked, the court made suggestions, but whether the suggestions of the court were accepted by counsel for the plaintiff does not appear; and finally the witness was asked by the court: "Can you say whether the condition which you told us that you found him in when you examined him was caused by the fall, or being thrown from the car?" To that counsel for the defendant excepted upon the ground that the question was incompetent, irrelevant, and immaterial. When asked by the court why incompetent, the counsel said: "I cannot see here where they have connected the condition discovered by the plaintiff. * * * There is not sufficient connection of that condition with this accident." The objection was

overruled, and the defendant excepted, and the witness then answered: "That could come from this." The court then asked the witness, "In your opinion, did it?" and the witness answered, "I could not say what he had before." The court then said to the witness that he could assume that plaintiff was a perfectly well man before he went off the car, and the answer was that, "if that was not there before, it would come from that." Question by the court: "Did it in your opinion?" The witness answered: "Yes, sir; if it was not there before." The witness was then asked: "Assuming all of these facts included in the last question, can you say with a reasonable degree of certainty whether the injuries thus described will be permanent?" This question was not answered, but, in answer to a question by the court, he testified that in his opinion these varicose veins could be caused by other things than the accident; that, from the appearance, the varicose veins had been there a good while—four, five, six, or seven years—might have been ten years; that people that "long stand" on their feet are more apt to have varicose veins; that nothing in falling on his back could induce him to have varicose veins in the knee; that these looked like old veins to the witness. I think the objection to this hypothetical question should have been sustained. The question is so indefinite and confused that it is impossible to tell upon just what facts the witness based his opinion, nor do I think that the evidence was sufficient to show that the varicose veins resulted from the accident. All the plaintiff's witnesses testified that he fell on his back, and the only expert examined testified that a fall on the back would not produce this condition. The accident happened on the 23d of May, 1899, and the action was brought on for trial in October, 1904, over five years from the time of the accident. The examination from which the medical expert testified was made two days before the trial. We have the evidence of the plaintiff that these varicose veins appeared some weeks after the accident, with the evidence of the physician that this condition of the varicose veins could not be caused by the fall upon the back; and the only evidence in relation to the fall is that of the plaintiff that he fell upon his back, and that they could result from other causes.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.